My notes say, okay, each side has 20 minutes, and so I'm assuming, since you look like Diane, but current, but I don't know that for a fact. You're the only person arguing on your side, is that correct? That's right. Alright, now my understanding is on the respondent's side, we've got Eric Michell and Michael Keneally, or Keneally, something, you'll tell me which. And it says that you have divided your time, 15 minutes will go to Eric Michell and 5 minutes to Michael Keneally, is that correct? I'll tell you 15 minutes, it's around Michael here. Oh, Michael, okay, alright, I'll leave the punch out of this, thank you. And what about you, mister, how do you say it? Keneally. Keneally, okay, I got it right the second time. Alright, just so that you know, alright, you have 20 minutes total, you have 20 minutes total with your, any time you reserve. When people divide their time, like you're doing, for the respondents, generally speaking, I just want to, the 5 minutes is going to go second, correct? Alright, if you see that mister Michael is going on and on, I won't let him go on and on if we don't have questions, but if we have questions, well, you know, we'll have them answered. That doesn't take away your time, okay, so you don't need to do a flying leap and take him down from the podium, so he's going into your time, so, but generally speaking, expect to be kept to your time, alright, good morning. Good morning, may it please the court, my name is Diane Curran, I represent the petitioners, and I'd like to reserve 5 minutes for rebuttal. Alright, you know it's aspirational, but we'll do that, okay, thank you. In its brief at page 5, NRC characterizes the decision on review here as procedural and says it does nothing more, quote unquote, than create a time limited window for PG&E to submit a future license renewal application. Okay, well, the, probably, and we don't conference on these cases before we come, but the question that I have is on the jurisdictional part, just start, and what is the quote unquote proceeding that would grant this court jurisdiction under the Hobbs Act? The grant of an exemption does not appear to be the first step of renewal proceeding, and it is not an amendment to the existing license. My understanding is they now have filed for a renewal, but at the time that this was happening, they went for the exemption first. That's correct, Your Honor. So, we take our jurisdiction very seriously. As you should, and in this case, as the Second Circuit found in Brodsky, the name that an agency calls its action is not necessarily definitive as to what it is, and we have three grounds for saying that you have jurisdiction here, and it does, the jurisdiction issue gets mixed up with the merits here, but briefly, I will say, and then I hope to get into the merits, what the NRC did here, what they really had to do was they revoked the 1991 timely renewal rule because they could not, they were not able to do what the non-discretionary duty that they had under that rule to find that they had a reasonable expectation of sufficient time to perform non-discretionary duties related to license renewal. In other words, the safety review required by the Atomic Energy Act, the environmental review required by NEPA, and the adjudicatory hearing that was required by both statutes for public participation. So, our position is this is not so much a carve out of a little exemption as throwing a whole rule out the window, that after this decision, the timely renewal rule for nuclear reactors is essentially meaningless, that any licensee could come in and say, if I come in before 30, sometime before 30 days, then I should be able to get timely renewal protection. That was not intended by the rule, and this decision has the effect of revoking the rule. So, you know, any time I look at jurisdiction, or I look at review, that, you know, parties always want, you know, of course, you want to have something reviewed immediately, whether it be interlocutory or whatever, but the renewal, but they hadn't filed for the renewal yet when this, when you asked for this, but by the same token, couldn't you go to, if we said we have no jurisdiction, couldn't you go to district court and do something about this, isn't it a question? It's not like you would have nowhere to go, right? Well, there's somewhere else to go, but we think we belong here for the reason I just told you, and also, this decision is preliminary to two things that are, that the court clearly has jurisdiction over. One is the NRC says on page 49 of its brief that if new issues come up during this, we're talking about the period of time between when 40 years is the statutory limit on the licenses for all nuclear reactors, and if they get to that period, that limit of 40 years, then in the time between that and the decision on the license renewal application, if new issues come up that they have not dealt with before that were not anticipated in the current license, they're going to impose new requirements by license amendment. A license amendment proceeding is clearly within the jurisdiction of this court. That is what the NRC says in its brief it is going to do, and then, I'm sorry. I'm sorry, you cited Brodsky, and Brodsky in footnote six notes that petitions are free to seek review in the district court of the NRC's actions pursuant to the APA. And so, the question I think in part is, where does this all fit in, in federal jurisdiction? The concept of, is there ancillary jurisdiction here? Yes. There is for the reason, the preliminary or ancillary jurisdiction comes from two things. First of all, this exemption decision sets in motion license amendment proceedings which the NRC says in its brief it is going to conduct. The court has jurisdiction over those proceedings. Second, we know the court has jurisdiction over the license renewal proceeding itself that was noticed, that recently noticed. We had a hearing notice come out about that. If, in fact, the NRC conducts license amendment proceedings to impose new measures that it did not include in the original license, those license amendment proceedings are going to affect the license renewal proceeding in which we have a right to participate. Council, in your view, is it enough by itself to convey jurisdiction that, as I understand it, before this new set of things happened, the license was going to expire on November 2, 2024, and now we don't know when the license is going to expire. First, factually, am I correct? I think jurisdiction, it's complex because of the operation of the APA. If, at whatever point, the NRC decides an application for renewal is timely, then that triggers the automatic application of the APA Timely Renewal Doctrine. So, when you get to 40 years, it basically makes that 40-year limit inapplicable, and the license continues in effect until a license renewal decision is made. And all the things that you want to talk about here, it seems to me, many of your arguments challenging the exemption are based on the idea that because the exemption is a de facto amendment or renewal of the license, certain statutory obligations apply. However, PG&E has submitted its actual renewal application. Why should we apply the procedural requirements to an exemption decision when those requirements will be fulfilled through review of the renewal application? Your Honor, we did not say that the exemption decision was a de facto license amendment proceeding. The NRC characterized our position as that, but that is not what we said. What we said was the NRC has upended the balance that was struck by the agency in the 1991 license renewal rule, where it had to balance on the one hand the requirements for license renewal because it had found there are new and significant safety risks that we did not anticipate in the original licenses for these two reactors or any reactors, then we have, when they get to 40 years under the Atomic Energy Act, we have to go through license renewal, which means safety review, environmental review, and the hearing process. On the other side of this balancing act, the NRC had to balance the APA timely renewal doctrine. And there was only one way in the 1991 rule that they said they could be balanced. And that was the agency found it had to have a reasonable expectation that it would have enough time before it hit the four-year limit to do these license renewal findings. Well, is the NRC required by statute or regulation to make a finding in any exemption to the timely renewal rule that the exemption will still provide adequate time for agency review prior to the license expiration date? The finding they must make, which is in a number of exemption decisions, and in the record, if you look at pages 221 to, I think, 230. Two-thirty statute or regulation? There's a, well, the regulation itself says we find that we must have sufficient time, a reasonable expectation, they can't, you know, predict with certainty, but we need a reasonable expectation that we will have sufficient time to perform these three functions before we get to 40 years. Because we know that if we haven't had time to do that, we are now in the uncomfortable position of a reactor operating past the period when we have found there are no insignificant risks that must be reviewed. The NRC, it can't erase the Atomic Energy Act requirements, nor can it erase the APA requirements. It has to balance them, and the only way the NRC thought they could be balanced, and this is in the 1991 rule, was if they gave themselves enough time to, a reasonable amount of time to review the license renewal application. Let me ask you, other than the general statements by NRC as to the unique safety risk due to age degradation of facilities, did you raise safety concerns with the operation of Diablo Canyon specifically, and where in the record are those located? We are, we plan to request a hearing on the license renewal application. But I'm asking you a specific question. Did you raise safety concerns with the operation of Diablo Canyon specifically, and where in the record can I find those? Yes, we did, we did raise safety concerns. We said we did not think that the NRC had sufficient time to review all the outstanding issues. This was a case where. Okay, but wait, that's not, you're not answering my question. What safety concerns did you raise in the record, and where is it? I'm sorry, I can't tell you the exact page numbers, but we raised concerns about issues such as the deteriorating condition of the pressure vessel in the reactor. And what we're, we did not ask for a hearing on that at that time. We just said the NRC has not shown that it will have, it has not expressed any expectation that it will have a reasonable opportunity to address that issue before it gets to the 40-year limit. This was, we were not looking for the license renewal hearing at the time of the decision on the exemption. Okay, so let me just get, how many, how many nuclear plants are there in the country? About 100. Okay, and the Hobbs Act, but whenever we decide, if we decide we have jurisdiction, it's only us to the Hobbs Act, right? Yes. Okay, so it's not giving jurisdiction to appeal exemptions in any other places. It's, it's limited to, it would, any decision, if we hear your case, it would be limited to nuclear plants, right? Yes. Okay, so I'm trying to decide the flood gate here of, you know, how many, yeah, you know, like if then the next thing I know I got an exemption for that, it's an exemption for that. And you would succeed that, you could bring actions in the district court. So, we're talking about 100, 100 something plants. How many do we have? About 100, well, not, and there's a marginal number left that are seeking license renewal or subsequent license renewal. But the point is that this, this exemption decision is going to swallow the rule that would prevent licensees from coming in in any other cases and saying, hey, there's 30 days left, we should be able to, to file an application. And if the NRC does their general oversight, if they impose license amendments, then, and if they get a hearing notice issued, that it's okay to operate any of these reactors after the 40-year limit without the prior hearing, the prior safety. You could go to district court, you could go to district court, if it's more convenient for you to come here and it would be faster, is that what you're saying? The district court review, if the court accepts the NRC's characterization of this action as purely an exemption, for instance, Brodsky, that was a question of the licensee wanted relief from a fire protection regulation. And the agency found, well, there's other ways that we can achieve the goal of the fire protection regulation. It was a very discretionary kind of decision. That's, you know, you're asking the court to review a discretionary decision on enforcement. We're saying, this does not walk or talk like an exemption. This exemption changes procedural, non-discretionary procedural requirements that the NRC imposes for the purpose of ensuring that reactors will not operate unsafely after the 40-year statutory limit, and at the same time, to balance that against the timely renewal rule. This is a very serious regulatory matter. It does not lie within the discretion of the agency. The agency in the 1991 rule, they recognized the statute limited their jurisdiction. They recognized that they needed to make decisions that were non-discretionary. And now, let's say they don't have anything in the Ninth Circuit on this. In this particular situation for our jurisdiction, we don't have anything in the Ninth Circuit, right? We have case law that says the public watchdog case. We have the general entitlements case that says your interpretation of your jurisdiction is broad. And what you have here, you have a color. I'm just saying it would be nice if you had a specific case. Yes, it would. But we don't. But you don't. And so, whatever we decide might be something that we have to publish. We certainly have cases where the courts have said, and I think this was in Laurian, if you've got something coming to the Court of Appeals, and there's a piece of it that belongs in the Court of Appeals, and there's a piece of it that maybe belongs in the district court, it doesn't make a lot of sense to send part of it to the district court when you're keeping the other part. Do you want to, how much time did you say you want to reserve? Five minutes. We're past that. But let me find out if my colleagues have questions. I just had a quick question. Go ahead. On Laurian, which you just mentioned. So, within Laurian, if you could respond to this proposition, you know, within Laurian's focus, the focus is on the relationship between the two proceedings. And there's a sub-focus on the issues resolved in those proceedings. Here, the argument, going the other way, I'm not saying I embrace the argument, but I'm interested in further understanding your response, is that the relationship between the exemption proceedings issues and the rule of proceedings court issues is tenuous. And that's a critical part of the analysis. And what I'm hearing you're saying is that it's not tenuous. May I give you an example? So, how is that what you're saying? It's not tenuous at all. And, firstly, as I had mentioned, the NRC is going to conduct license amendment proceedings in order to address these new issues. This court definitely has jurisdiction over those license amendment proceedings. And they are directly related to this exemption decision. They are the cure that the NRC is offering for the fact that it is going to be having to address issues, safety issues, new safety risks that were not addressed in the original licenses that were issued 40 years ago. You have jurisdiction over those license amendment proceedings. And, in addition, let's say in one of those proceedings, you take something like the pressure vessel, which is, like all pressure vessels, in a deteriorating condition because of heat, humidity, and radiation. Supposing in the license amendment proceeding, the issue comes up, should this vessel be repaired or replaced? And the NRC says in the license amendment proceeding, to which petitioners would not have a right to participate because it would be an ex parte proceeding between the NRC and the licensee. Supposing the NRC says, we've decided this thing can be, you should repair this, and that will solve it. We get to the license renewal case, and we want to raise the fact that we think this pressure vessel should have been replaced. It's not sufficient to repair it. The answer's going to be, we decided that already, and we're not going to make these people spend more money after we made them spend money to repair it, to replace it. You're out of luck here because we had the proceeding already, ex parte, with PG&E. Well, we resolved some of these issues that are important to you, and we are now, you know, as a practical matter, that's been decided, and you can't participate. These are the kinds of Hobbs Act issues relevant to the safety issues that will be decided in the license renewal case, but we want to have a chance to really litigate, and we want to ensure that the NRC minimizes, you know, my clients live near this reactor. They want to fulfill the purpose of the 1991 timely renewal rule, which is to minimize the likelihood that after these reactors hit their 40-year limit, they're going to be operating beyond that without the comprehensive safety and environmental review and hearing that the NRC thought under its organic statute and underneath the work necessary, they used the work necessary in order to protect public health and safety. It is a balancing act between those statutes, and the NRC here has thrown that balance out the window. That's why we're here. The balance is gone. Okay. Let me, do you see anyone else? All right. We've taken you over time, but we'll give you some time for rebuttal. And we'll all decide after we hear from the other side how much time we need. Thank you. All right. We'll hear from NRC. Good morning. Good morning. Good morning, and may it please the court. My name is Eric Michael. I'm here today on behalf of the third respondents, NRC and the United States. I see that the panel is very interested in jurisdictional issues, so I'm just going to go ahead and start with that. It's hard to argue that the exemption decision does not function to modify the licenses expiration dates. Given the directive in Lorian and General Atomics to, quote, unquote, broadly read the jurisdictional statute, why shouldn't we consider this decision as ancillary or incidental to the court issue of Diablo Canyon's operating licenses?  First and foremost, I would respectfully disagree with the characterization that it modifies the license. First and foremost, the exemption, which was issued in March of 2023, this was before the application came in. The exemption, four corners of the exemption says that this exemption provides the operator of Diablo Canyon more time to submit a future license application. And if they do, the benefits of timely renewal under the APA will accrue. Those are benefits that are inherent in the license by nature of the APA and its incorporation. I just want to step in. I don't want to stop you answering Judge Callahan's question, but I want to ask you, I think this was perhaps inherent in her question, but I want to make sure I'm right. Before these proceedings started, the license was going to expire on November 2, 2024, right? Unit one, yes. There's two units, unit one. Yeah. And the termination of operations was going to be August 26, 2025. That's unit two, yes. And now as a practical matter, both those dates are gone. As a practical matter, if we reach those dates and the NRC has not finished its review of the license for application, they will be deemed to have not expired. So that is correct. And that's what the timely renewal provision of the APA provides. So if I could get back to your question, Judge Callahan, I think that really what this boils down to, and since we are asking this court to dismiss and follow the same reasoning as the Second Circuit did in Brodsky, we certainly agree with the holdings of this circuit and some of the cases cited by the District for Jurisdiction like Public Watch Dogs and General Atomics. We agree that when the NRC is engaging in a licensing function that the reach of the HOBZEC, it sweeps broadly, it sweeps up those types of preliminary, incidental, ancillary orders to licensing that's described in those cases. But our position, and this is what the Second Circuit persuasively explained in the Brodsky decision, is that that long reach of the HOBZEC, it simply goes out the window if we are talking about a final order entered in an exemption proceeding. And as Judge Callahan asked your friend, we have no, at this point, we have no such rule in this circuit. That's correct. I think Public Watch Dogs, I think, is also directly on point. In that case, the petitioners, I think Public Watch Dogs is a hard case because the petitioners, they're really through the whole kitchen. The HOBZEC adopted, for example, the Brodsky rule. That's correct. And Public Watch Dogs, this court said we have no reason to decide Brodsky because that case did not involve an exemption. I think General Atomics, which the petitioners primarily rely on for jurisdiction, I actually do think that that reinforces our jurisdictional position as well. Because in General Atomics, you had the NRC issuing an order to a company, holding them financially liable for, you know, decommissioning costs of its subsidiary. That company was objecting to the NRC's exercise of jurisdiction. The NRC was going to hold a hearing specifically to determine whether or not this company needed a license or whether their subsidiary's license needed to be renewed. And when they went to federal court seeking to enjoin that proceeding from happening, this court, when it reached this court, said no, that was properly under the jurisdiction of the HOBZEC because this was a proceeding that was clearly tethered to a licensing proceeding, described in Section 189 of the Atomic Energy Act, that was already underway. And so. Does it change it now that PG&E has filed an application? No, it does not, Your Honor, because. Can we tether it to that? I don't think so, Your Honor. And the reason is, you know, if you read the exemption closely, the exemption is indifferent on whether or not a license renewal proceeding actually will happen. The exemption decision doesn't say, you know, you must submit an application by this date, you know, under penalty of law. It says if you do so, it will be treated as timely and we'll have a license renewal proceeding just like we would. You know, this exemption, if, for example, PG&E had submitted their license renewal application on January 1st, you know, not within the time period of the exemption, we would still have the exact same license renewal proceeding, but the exemption itself would evaporate, it would become moot. But, Brett, in your view, I mean, obviously, this is your view, that even taking a broad view, that's not preliminary. It's preliminary, as we said in our brief. It's preliminary only in the sense that it came first. But it is not tethered, intertwined, inexorably intertwined, whatever adjective you want to use. Because it might not happen. What's the it in that sentence, Your Honor? Well, I mean, because they might not, it might all terminate. There might not be this future proceeding. We don't know what's going to happen, so it's not preliminary. It's not an order entered in a licensing proceeding that is preliminary to the final order of a licensing proceeding that, you know, this court would have exclusive jurisdiction under. Okay. Hypothetically, I'm not saying this is what's happening here, but I'm going to sort of assume that being the agency that you are, that there may be some, that the use of the agency somewhat might change with elected officials, who the president is, or whatever. What if, hypothetically, if you were handing out exemptions, like candy, and the public was being endangered because you were handing out all these exemptions, and there were these unsafe facilities operating while you decided whether you were going to renew. How would someone address that if we don't have jurisdiction? I won't fight the hypothetical, Your Honor. Yes. As you pointed out. I know you're not handing them out like candy, but let's say you were. I mean, let's, but how do you challenge it? As you correctly pointed out, Your Honor, we're not saying that this is unreviewable agency action. If it's not a Hobbs Act matter, it goes to federal, it's available to go to federal district court as an APA challenge of agency action. But on top of that, you know, the concerns you're articulating. Would someone go to get a preliminary injunction to stop the plan from operating on a safety basis, or do what would they do? If any member of the public ever has a concern with the safety of an NRC regulated facility, they can file what's called a 226 petition. The same petition that was the subject of the Lorien case. That is where, as a formal request from a member of the public for the NRC to initiate a section 189 Atomic Energy Act proceeding to modify someone's license, to revoke their license, to suspend their license. They can at any time submit that petition to the NRC. They're entitled to a response from the NRC, a decision on a petition. And the NRC's decision on that petition is judicially reviewable under the Hobbs Act per the Lorien decision. Well, tell me the parade, if we decide we have jurisdiction. I'm saying that once again, hypothetically, because I don't know what we're going to decide. Tell me, what are the parade of horribles for the NRC if we were to find we have jurisdiction? I think if the court finds jurisdiction here, I think that the one potential negative consequence of that is depending on how the decision is written, depending on how broad or narrow the holding is, it could potentially cause confusion as to whether or not exemption proceedings can or cannot also trigger the same hearing rights that are in section 189 of the Atomic Energy Act. That provision of the Atomic Energy Act that specifically says these are the kinds of administrative proceedings where the NRC has to offer members of the public the opportunity for a hearing if they're adversely affected. Of course, that could depend on what we decided on the merits, if we decided there was jurisdiction. Well, if you decide in favor of jurisdiction on this issue, again, that jurisdiction here, the Hobbs Act and section 189 of the Atomic Energy Act, they're linked together in terms of what provides this court with direct appellate review of NRC decisions. So, if there is a holding that notwithstanding what Brodsky said, which was a categorical decision that just when the NRC is issuing an exemption, the plain text of the statutes at play here, that does not fit into their plain text. If the court would issue a holding that said, well, this exemption, notwithstanding what the Second Circuit said and Brodsky, we're confident that this exemption fell within that long reach of the Hobbs Act that's been described in other cases. Again, I think just depending how that is written, it could cause some confusion as to, well, is the Ninth Circuit also suggesting that because there was jurisdiction to review this exemption that perhaps there were hearing rights associated with that that the NRC eschewed or that the NRC now has an obligation to consider its hearing rights with respect to exemptions even though it's been the NRC's longstanding position that because exemptions aren't listed in that part of the statute, they don't trigger the hearing and public participation rights that its licensing decisions do. So I think that that is one potential negative consequence. The other being that, again, because the Second Circuit, their holding was categorical. Exemptions fall outside of the Hobbs Act. You know, regardless of how broad or narrow the holding was, I do think the court would be creating at least some circuit split on this issue because it would necessarily be in tension with the categorical holding of the Second Circuit. So with the remainder of my time here, I do just want to respond briefly to some of the arguments with respect to safety that have been made both in the courtroom today and particularly in the reply brief. I think the petitioners, when they're challenging the NRC's safety finding in its exemption, which again was one of three findings that the NRC had to make pursuant to its established exemption criteria, you know, was it lawful? Was it safe? Was there special circumstances? So with respect to safety, I think the petitioners, they are primarily relying on statements taken from the NRC's 1991 license renewal rule. I think they are perhaps inflating the importance of some of the significance of some of the statements that are repeatedly cited throughout their briefs. I just did want to, you know, we said this in our brief, I want to clarify again today that it's not the NRC's position that license renewal happens at year 40 because the NRC's made a regulatory finding that the plants are unsafe at year 40 unless and until they receive immediate safety upgrades. That's not the purpose of license renewal. The purpose of license renewal, which is reflected in the NRC's regulations at Part 54, Your Honor, Judge Callahan was asking for, you know, where's the statute of regulation that says what the agency has to do before it renews a license. It's section 54.29, which says these are the specific findings the agency has to make before renewing a license. The purpose of license renewal is for the agency to ensure that the operator of the facility who is asking for permission to operate for years 40 through 60, that they have a plan in place that, you know, a reasonable plan in place that is going to ensure that the natural effects of aging on specific kinds of structures or components at the facility are going to be appropriately managed over the next 20 years, the license term they're asking for. Well, it just seems sort of contradictory that to, on the one hand, recognize that there are unique risks from age-related degradation to facilities, but on the other hand, say this exemption, which almost certainly will allow Diablo Canyon to operate past its current license expiration date, poses no age-related safety risk. How do you reconcile those two positions? So, again, that passage from the 1991 rule that there are unique safety risks associated. So, I would say three things on there. The first one, I do think that if you read the language in the rule more holistically, that's taken out of context, but more importantly, the other things that I wanted to point out were that when the petitioner cites the 1991 license renewal rule, they're not even tithing to the most up-to-date version of the rule, as we pointed out and cited in pages 47 and 48 of our brief, the NRC actually amended the license renewal rules four years later and issued an update to the license renewal rules of how they read today in 1995. And if you look at the Federal Register notice that we cited there, one of the reasons for that amendment to the regulations was that almost immediately through practical experience, the NRC determined that actually there are existing NRC regulations, there are existing licensee maintenance requirements in place that we can give more credit to in our license renewal rules in terms of are the effects of aging being managed, you know, in years zero through 40 to some degree. Now hypothetically, if we were to decide that we have jurisdiction and we decided to publish on this, what are the ways that it could be a limited decision not having a parade of horribles and subject to abuse? I think, not playing the hypothetical, if that's what you want to hold. I think that it would have to be, I think it would have to be limited to the specific facts of this particular case, this particular exemption because of the kind of unique procedural posture that we're in with this whole timely renewal, and they weren't timely renewal, and then they weren't, but then they were compelled by a significant state interest to re-enter time, so I think you'd have to say that in this very specific case. It's that unique when the state says, because they weren't going to renew, correct? And then the state passed a statute that said, hey, you have to renew. We need, there's a danger to the power grant, right? But the state essentially directed PG&E to say, re-pursue license renewal, do everything that you need to do to preserve the option to continue operating for at least another five years. Are you aware of any other circumstance where anything like Senate Bill 846 ever happened? I am not, and there's nothing in the record in terms of other, you know, the agency has issued timely renewal exemptions in the past to other applicants, including applicants who sought them after the five-year deadline had already been missed. That's the Oyster Creek exemption on page 70 of the record. So, the agency has moved the timely renewal deadline, again, always through the application of its pre-established exemption criteria. It's not, they're not done through ad hoc decision-making. It's through the established criteria of, you know, is it lawful? Is it safe? Other special circumstances, you look to 10 CFR 50.12. I'm understanding, just really quickly, I'm understanding you to say that you would not want any decision that would create a right to a hearing on the exemption. It's been the undersea's longstanding position that the plain text of the Atomic Energy Act means that if there are not rights to hearings under, for exemptions, yes. Go ahead. Do you have a quick question? I'll follow up on this last point. Is it, in this case, are we warranted in looking at, in your view, legislative history, statements of purpose, non-text sources for interpreting whether we have jurisdiction under the Hobbs Act? I don't know that I have a position on that, Your Honor. I think that's really the court's discretion in terms of whether, what statutory tools and interpretation it needs if it thinks that there's ambiguity in the statute, particularly in light of the Supreme Court's Loring Decision, which I think kind of articulated that the Loring Decision itself looked behind some of the legislative history in terms of the undersea's hearing provision and judicial review and some of the things of that nature. So. And then, finally, you referenced the special circumstances. So, when a demonstration of special circumstances justify an exemption under Section 50.12, is premised on an act passed by the state legislature, what is the permissible scope of inquiry for determining whether that act supports the existence of those circumstances? So, I think the exemption as written in the record in this case exemplifies that. The NRC, when determining special circumstances, it took the concerns of the elected lawmakers of the state of California at their word and it accepted the conclusions and statements that they placed into legislation. This wasn't just a statement made by individual lawmakers or a statement made by one particular political figure. This was enacted into law by the state's lawmakers, the highest levels of government. So, the NRC, in determining special circumstances, of course, took that seriously and took them at their word. But, again, the fact that special circumstances in the agency's view were present and that it would be, that it was showing that they would be in the public interest to grant the exemption, that is only one of multiple prongs that had to be satisfied, including the NRC's expert judgment that any operation in timely renewal, if that did occur, would not create an undue public health and safety risk. We've taken your overtime, but we don't have additional questions. So, thank you. Thank you. All right, we have five minutes for the intervener, PG&E. Are you happy to be here when it's not wildfires and things like that? Always happy to be here, Your Honor. Good, good. May it please the Court, Michael Kenyally on behalf of intervener, PG&E. The NRC issued a well-reasoned decision explaining why in these unique circumstances. And I would submit that SB 846 does make this a case of unique circumstances. PG&E merits an exemption from the normal schedule for timely renewal, applying the well-settled criteria that the NRC has adopted for issuing exemptions in its rules. And I would just note, because petitioners rely a lot on the 1991 rulemaking, which is fair enough, that the exemptions rule that the NRC applied here was part of the package rules that the NRC adopted at that same time. And so, really, the question before this Court on merits is whether the NRC correctly applied the text of the regulation that it adopted as part of that 1991 rulemaking, addressing exemptions for a whole range of scenarios, including timely renewal. And we submit that it did for the reasons that Mr. Michael touched upon. There are three real requirements. The exemption has to be consistent with law or not inconsistent with law, authorized by law, rather. It has to be not something that's going to present any due risk to public health and safety. And there has to be special circumstances. I take it that petitioners are, at least under their reply briefs, arguments not really asking the Court to second-guess the special circumstances inquiry. And I think that the amicus brief that California's Attorney General's Office submitted in this Court really highlight the points that the legislature already made in SB 846 about how the state is undertaking an ambitious goal of transitioning to zero-carbon energy resources by 2045. And there is a need for a bridge that Diablo Canyon can provide as it brings more of these resources and renewable resources in particular online and interconnects them with existing infrastructure and deals with supply chain issues and all of that. And so this period of timely renewal is actually the most important part, perhaps from the state's perspective, of the extended operation of Diablo Canyon because there's this need for this on-ramp as the state transitions its electrical grid. And these years of the timely renewal provision, or months, or we don't know exactly how long they will be, are extremely important according to the state's analysis. So. Okay, but you weren't going to renew. And so the petitioners relied on that. You know, so anything that, you know, they don't, to their credit, didn't file a lawsuit when you said you weren't going to renew, and they relied on that, and then this happens. So are they in a situation of special circumstances because they were, you know, they detrimentally relied on the fact that PG&E wasn't going to renew, and then voila, this law shows up, and here we are. I don't think we detrimentally relied on that, Your Honor. And of course we did. We were planning to renew, and then through negotiations with various stakeholders, determined that we shouldn't do so, that it was not necessary. And then that's when California passed the legislation that we've discussed, and petitioners, or several of the petitioners have been actively involved in a lot of these discussions all along the way. So I think they were happier when we weren't going to renew. But it wasn't that they were, at least I'm not aware of any actions they took in detrimental reliance on that. And we weren't trying to, you know, do a head fake either. You know, it's in my client's interest to get these issues resolved so that we have some certainty as it continues to plan for the months and years ahead. And so certainly I don't think anyone suggests that there was bad faith on any of the parties' part about how to react to what were, in fact, different circumstances in 2022 than 2018. And in particular. But what if they had denied the exemption? Would you have filed the application? Because it seems like you have to file the application anyway, right? So the timeline here is going for the exemption before you file the application. What significance should we give to that? Well, I think it would have been a difficult situation in that circumstance. And the state, I should say, continues to monitor its electrical needs. And the state utilities are continuing to monitor that. And if there had been some indication that Diablo Canyon Unit 1 would have to go offline in November 2024, I don't know what the various decision makers here would have decided. But I do know that the agency took the state's interests into account. And it then applied the three criteria that are laid out in the text of the rule. And I think it did so reasonably. And I just want to highlight, because I think it's important here to emphasize the uniqueness of the situation, that PT&E had submitted a sufficient application well before the deadline, five-year timetable, and as a result of that, the NRC already issued a safety evaluation report that was very comprehensive, 700 pages, that addresses the very things that are going to be, again, addressed here. But it did so back in 2011. And so we know that it has some basis for confidence that it can conduct an efficient and focused proceeding in this case. Unless the court has further questions, we would ask. I just have actually one question, which is the concern expressed about the degradation safety risks, you know, the practical concerns. I mean, we can talk about jurisdiction, it's all, obviously we have to, it's critical. But, you know, stepping back, how do you answer, what do you say to counsel's concerns? Well, in addition to that point, that there has already been a full safety evaluation report addressing the 20-year renewal period, I would emphasize that the agency is also monitoring this currently. Apart from any license renewal application review process, and we have, you know, supplemental excerpts of record 58, where the agency has asked for information from PT&E about effects of its aging management programs. So there's that piece of it, too. And then, as Mr. Michael pointed out, there's section 2206. And petitioners can, and some of the petitioners have brought requests for action alleging that there are currently safety risks at Diablo Canyon that are not before the court today, but are going through the agency's process for 2206 petitions. So there are all these channels that if there is a genuine concern about safety, that can be heard and will be heard. Okay, thank you. Thank you, Your Honors. All right, we've already taken you over, but because we've gone over a little over there, I'll give you five minutes for rebuttal. Thank you. I want to make a couple points in response to the NRC and PG&E. First of all, petitioners didn't say in our complaint about the exemption decision that it was a modification of PG&E's license. We didn't ask for a hearing. What we asked for was fidelity to the 1991 license renewal rule. This was an administrative decision made by the NRC without any kind of public participation, without any record that we could have contributed to, that the standard for an exemption was applicable and satisfied here. And we came in and said to them, as we say to you now, this is not a correct application of the 1991 license rule, which, by the way, was not changed by the 1995 rule. The NRC has never abandoned its original finding that to operate a reactor past 40 years raises new and significant safety concerns that need to be addressed in the license renewal process through a prior safety review, a prior environmental review, and a prior hearing. Now, if you're asking us to say that if someone doesn't file the application five years in advance, they can never have an exemption. No, that is not what we are asking. What are you asking? What we are asking for is if the NRC wants to exempt PG&E from the rule, it has to make a finding that it has sufficient time to conduct these three types of actions that it decided were necessary under the Atomic Energy Act and NEPA before reaching a 40-year limit. This is how the NRC balanced the Atomic Energy Act against the APS. I'm not saying they could never issue an exemption if they didn't have enough time to get it done before 40 years. If they didn't have a reasonable expectation. We're not asking for a guarantee. What we are asking for, and really all the NRC can do when it has to balance these two statutes, is to say we reasonably think we can get this done. If they don't make that finding, they're putting public health and safety at risk without justification. It's this balancing of statutes. It's not discretionary to balance those statutes. It's not discretionary to throw out the Atomic Energy Act procedures and elevate the Administrative Procedure Act while disregarding them. You cannot find anything in the exemption decision that says we have a reasonable expectation that we can finish any of these processes. They don't even mention NEPA. And with respect to the hearing, they say, well, we think we can put out a hearing notice and get started. And with respect to the safety, they say, well, we have our ongoing oversight, which in the 1991 rule, the NRC said that's not sufficient. The statute was passed how much in advance of when it would have expired? The statute? The state statute. Oh, yeah. Statute was how much in advance of when it would have expired. Well, the five-year point happened in 2019. The statute was passed in 2022. So, it's kind of late. It's late. But is that, whose fault is that? Well, it's not our fault. That's for sure. But is it any of their fault? It's, perhaps it's nobody's fault, but the Atomic Energy Act, the safety guardrails that the Atomic Energy Act puts on the operation of nuclear reactors can't be just thrown out the window, which is happening here. How could they, under those circumstances, if it happened in 2022, and they would have had to have filed in 2019, if they granted the exemption, what did that exemption have to look like to be valid? It had to look like, oh, I didn't have to say. It had to say magic words that are in every other exemption. They are cited in our brief. They are in the record. The magic words are, we expect that if the application is filed by such and such a date, we will have sufficient time to complete the safety review, the environmental review, and the hearing process. These exact words are used in every other exemption decision, including the Oyster Creek decision that was mentioned by council for PG&E. They don't make that finding here. They say, we're going to substitute something else for the safety review, which is, you know, the ongoing safety review, plus we're going to pull up that old application by its suspenders, which the NRC, at page 494 to 495 of the record, the NRC wrote a letter to PG&E. They tried to work out. I'm trying to understand your argument. Okay. So they have to say that we expect to finish it, and we have to expect to finish it before the 40 years, right? Correct. And there's no way that we're going to. So do you want them to say a why? No. I mean, how could they get it done in that period of time? Well, maybe it can't be done. And if it can't be done by the 40 years, they can't give an exemption. Is that right? Is that your point? That's right. But listen, you know, the one thing that the NRC had discretion to do, and it would be revealable under an arbitrary and capricious standard, was to say we expect we have enough time to do these things. Then we would probably be in district court saying we think that's arbitrary and capricious. But that's not what happened here. What happened here was the NRC warped the safety findings, the kind of safety review it had to do, and said, we're going to do something before 40 years. That's good enough. But the 90, 91 rule says, no, something's not good. It's inadequate to say, well, just to our general oversight. It's inadequate to say we're going to let it stay. I understand your argument. Let me make sure my colleagues do, and that they don't have any questions. Because now you're over the five minutes. So we don't have any additional questions. So that'll be very much. Thank you both for your argument in this matter. This matter will be submitted and courts and recess until tomorrow at 9 AM. All rise. All right.     Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. This court shall stand in recess until tomorrow at 9 AM.
judges: CALLAHAN, BENNETT, Katzmann